# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **COY E. BAILEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action Number |
| | ) **4:21-cv-00093-AKK** |
| **KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Coy E. Bailey seeks review of the decision of the Acting Commissioner of the Social Security Administration denying benefits. Doc. 1. Bailey argues that the Administrative Law Judge should have found Bailey's asthma severe and failed to consider his extensive work history. *See* doc. 13. After careful review, the court concludes that the ALJ's decision is due to be affirmed, as set out herein.

### I.

Bailey worked as a customer service assistant at Lowe's before applying for disability insurance benefits in April 2019 based on asthma and hand tremors. *See* R. 15; R. 19; R. 38–39. After the SSA denied his claims, Bailey, his attorney, and a vocational expert attended a hearing before an ALJ, who found that Bailey was not disabled. *See* R. 12; R. 15. The SSA Appeals Council denied review, R. 1, and the

ALJ's decision became the decision of the Acting Commissioner. Bailey subsequently filed this petition. Doc. 1.

## II.

On review, the court may decide only whether the record contains substantial evidence to support the ALJ's decision and the ALJ applied the correct legal principles. 42 U.S.C. § 405(g); *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020). Courts review de novo the legal conclusions upon which the Commissioner's decision is based, while the Commissioner's factual findings are conclusive if supported by "substantial evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* This threshold "is not high," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), and requires "less than a preponderance," *Moore*, 405 F.3d at 1211. Thus, if substantial evidence supports these findings, the court must affirm, even if the evidence preponderates against them. *Noble*, 963 F.3d at 1323.

When determining whether substantial evidence exists, the court cannot decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. *Id.*; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court also cannot automatically affirm the decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Rather, the court "retain[s] an important duty to

'scrutinize the record as a whole' and determine whether the agency's decision was reasonable." *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).

### III.

The Social Security Act "places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work." *Bloodsworth*, 703 F.2d at 1240. Indeed, "[t]his stringent burden has been characterized as bordering on the unrealistic." *Id.* (collecting cases). A claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 416(i)(1). The ALJ must determine, in sequential order:

> (1) whether the claimant is currently unemployed;
> (2) whether the claimant has a severe impairment;
> (3) whether the impairment meets or equals one listed by the Commissioner;
> (4) whether the claimant is unable to perform his or her past work; and
> (5) whether the claimant is unable to perform any work in the national economy.

20 C.F.R. § 404.1520(a); *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to

3

any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel*, 800 F.2d at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).

While evaluating the claimant's record, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his [or her] decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).  In addition, the ALJ will not defer or give any specific weight to any medical opinions or prior administrative medical findings.  20 C.F.R. § 404.1520c(a).  To determine the persuasiveness of a medical opinion or prior administrative finding in the record, the ALJ focuses on factors that include supportability,[1] consistency,[2] the medical source's relationship with the claimant,[3] and the medical source's specialization.[4]

---

[1] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1).

[2] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

[3] This includes the length of the treatment relationship, the frequency of the examinations, the purpose of the treatment relationship, the extent of the treatment relationship (*e.g.*, the kinds of testing performed), and the examining relationship (*i.e.*, whether the medical source actually examined the claimant or only reviewed the claimant's file). *Id.* § 404.1520c(c)(3).

[4] "Specialization" refers to whether the medical source has received "advanced education and training to become a specialist," which may render that source's findings more persuasive. *Id.* § 404.1520c(c)(4).  In addition, the ALJ may consider evidence showing that a medical source

*Id.* § 404.1520c(c).  The most important factors are supportability and consistency, and the ALJ must articulate how persuasive he or she finds the medical opinions and prior findings in the record.  *Id.* § 404.1520c(a).

Further, when a claimant provides testimony concerning "pain or other subjective symptoms," the ALJ must determine whether there exists "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the record shows the claimant has a "medically determinable impairment that could reasonably be expected to produce her symptoms," the ALJ must assess the "intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work." *Costigan v. Comm'r of Soc. Sec.*, 603 F. App'x 783, 786 (11th Cir. 2015) (citing 20 C.F.R. § 404.1529(c)(1)). The ALJ must consider "all of the record," including objective medical evidence, the claimant's history, and statements by the claimant and the claimant's doctors, and the ALJ may consider the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or symptoms; the

---

"has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id.* § 404.1520c(c)(5).

5

type, dosage, effectiveness, and side effects of the claimant's medication; and treatments other than medication, for example. *Id.*

The ALJ must examine the claimant's symptom-related testimony in relation to the other evidence, considering whether there are "inconsistencies or conflicts between those statements and the record." *Id.* If the ALJ subsequently discredits the claimant's testimony, the ALJ must "articulate explicit and adequate reasons for doing so," and the failure to articulate the reasons for discrediting this testimony "requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). In sum, the court "will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell*, 771 F.3d at 782 (internal citations omitted).

## IV.

At Step One, the ALJ determined that Bailey had not engaged in substantial gainful activity since his alleged onset date in January 2018. R. 18. At Step Two, the ALJ found that Bailey suffered from one medically determinable impairment: asthma.[5] *Id.* However, the ALJ deemed Bailey's asthma nonsevere. R. 19.

---

[5] The ALJ noted Bailey's history of fibromyalgia but stated that the record "contain[ed] no evidence showing that [he] exhibit[ed] the symptoms associated with this impairment," such as the "requisite number of tender point findings." R. 18. The ALJ also determined that Bailey's neck pain was not a medically determinable impairment due to Bailey's normal examination findings. *See id.* Last, the ALJ determined that Bailey's tremors did not constitute a medically determinable impairment because "he had normal gait, regular heart rate and rhythm, no edema, no evidence of scoliosis, spasms, or kyphosis, negative straight leg raise testing, full strength of all extremities, normal grip strength, intact fine and gross manipulation, full range of motion of all

To evaluate Bailey's asthma and other symptoms, the ALJ began with Bailey's self-report. *See* R. 20. In this report, Bailey indicated that his asthma and tremors affected his abilities to lift, squat, bend, reach, walk, talk, climb stairs, complete tasks, and use his hands due to coughing, shortness of breath, and side effects from his medication. *Id.*; R. 195. Bailey reported that he could walk 200 to 300 yards before needing to stop and rest for a few minutes. *Id.* Bailey also reported that he took care of pets, could manage his personal care except for some issues with shaving and eating, took his medication without reminders, prepared meals, swept, did household chores and repairs, mowed the lawn, drove, shopped, went hunting and fishing, and shopped in stores. *See* R. 20; R. 191–95.

The ALJ then cited Bailey's hearing testimony. At the hearing, Bailey testified that he stopped working at Lowe's in early 2018 because of his asthma, which was inflamed by a work injury. *See* R. 34; R. 38. Bailey also testified that he often coughed "for a long time" upon waking up, leaving him "drained." R. 40. He noted that although he attempted to do housework and repairs, his asthma required him to take breaks every 10 or 20 minutes. R. 40–41. Bailey testified that he used a Symbicort inhaler twice a day, plus Nasacort, Claritin D, and a breathing machine at night, and that he used an emergency inhaler as needed. *See* R. 41. He added that

---

joints, intact cranial nerves, and ability to tandem and heel/toe walk, and squat and rise." R. 19. Bailey does not challenge these findings on appeal. *See generally* doc. 13.

he avoided cleaning products that aggravated his asthma and that his right hand shook because of his prescribed steroids. R. 42–43.

After summarizing this testimony, the ALJ determined that the medical evidence did not show that Bailey's asthma would significantly limit basic work activities. R. 20. Here, the ALJ turned to Bailey's medical records. Around the time of Bailey's alleged onset date in January 2018, Bailey visited the Rapid Care Family Medical Clinic complaining of "bad cough, some nasal congestion and post nasal drip" after "inhal[ing] spray paint" at work. R. 340. The clinician "observed mild respiratory wheezing" and noted a "regular respiratory rate," R. 342, and Bailey's X-ray revealed "[s]lightly increased bronchial vascular markings" and "no other acute abnormalities," R. 343. He was diagnosed with bronchitis and pneumonitis, R. 345, and given medicine, R. 343. At a follow-up visit, he "[did not] feel like he [was] a lot better" and received an inhaler. R. 348–50.

Bailey also visited Decker Clinic at least through early 2019 for cuts, bug bites, indigestion, sinus congestion, and coughing. *See, e.g.*, R. 402–09. One 2017 visit, for example, indicated congestion, nasal drainage, and coughing. R. 406. In July 2019, Bailey had a physical exam with Dr. Joel M. Raborn, who noted that Bailey had "expiratory wheezing" and "coughing," "appeared to have no shortness of breath at rest," and "did not appear to be using the accessory muscles of respiration." R. 450.

Through April 2020, Bailey visited Pulmonary Associates of the Southeast. *See* R. 21. In September 2018, Dr. Allan R. Goldstein examined Bailey after he "had been working in the yard and had an increase in his shortness of breath and wheezing probably directly related to pollens and dust." R. 394. Dr. Goldstein found that Bailey's "lungs [were] clear" and that he "ha[d] moderate congestion of the nasal mucosa." *Id.* Bailey's chest X-ray and pulmonary functions were "normal," and Dr. Goldstein recommended medication and a rescue inhaler. *See id.*

In early 2019, Dr. Goldstein opined that Bailey "[was] doing reasonably well" but "[had] an increase in his cough, wheezing and shortness of breath usually related to some chemical exposure" upon visiting stores like Wal-Mart and Lowe's. R. 395. Dr. Goldstein remarked that Bailey had sensitivity to chlorine, colognes, perfumes, glues, and hay; could go hunting but might get short of breath or cough more in cold weather; and used his rescue inhaler less than once per week. *Id.* Dr. Goldstein also reported that Bailey had "normal" vital signs, "clear" lungs, and "mild congestion of the nasal mucosa" and determined that Bailey had "occupational asthma with nonspecific bronchial hyperresponsiveness." *Id.*

In September 2019, Dr. Goldstein reported that Bailey had not "improved to a great degree, but he [was] better." R. 487. His chest was "[c]lear to percussion and auscultation," and "[p]ulmonary functions show[ed] obstructive defect with

9

significant improvement in the small airways." *Id.* Dr. Goldstein concluded that Bailey had asthma with exacerbation. *Id.*

In December 2019, Bailey went to Dekalb Regional Medical Center for emergency care due to difficulty breathing and heavy coughing. R. 459–61. Despite Bailey's "severe" wheezing, the clinician reported that Bailey had "normal" respirations and did not display signs of "respiratory distress" and diagnosed him with "acute asthma." *See id.* The clinician prescribed additional medicine, including a nebulizer. R. 462.

In early 2020, Bailey returned to Dr. Goldstein, who opined that Bailey was "doing much better" and "having no acute asthma symptoms." R. 489. Bailey "did have some cramping of his fingers and toes" while on steroids, but his lungs were "clear" and his nasal passages "[were] minimally congested." *Id.* Dr. Goldstein did not change Bailey's chronic medication. *Id.* Pulmonary Associates recorded that Bailey's "[s]pirometry was acceptable." R. 521. Around this time, Dr. Goldstein reported that Bailey could occasionally lift or carry 50 pounds and frequently lift or carry 25 pounds, could sit for eight hours and stand or walk for four hours during an eight-hour workday, should avoid dust and other environmental irritants, and would not miss work if his asthma was "under control." R. 455–56. Dr. Goldstein wrote that his "answers presume[d] asthma under control—asthma is the issue." R. 455.

After citing and describing these records, the ALJ determined that they did not fully support Bailey's alleged limitations. R. 22. The ALJ reasoned that although the evidence "[did] show occasional findings of wheezes and cough," Bailey's exam findings "[were] generally normal, including lungs clear to auscultation, and oxygen saturation on room air within normal levels." *Id.* The ALJ also stated that Bailey's "chest [X]-rays and pulmonary function tests were noted to be normal and/or a minimum obstructive defect with full reversibility." *Id.* The ALJ remarked that Bailey's asthma exacerbations generally followed environmental irritants that he "was aware of . . . and did not prevent," including moving hay. *Id.*

In addition, the ALJ found that Bailey's daily activities "further diminish[ed] the persuasiveness of his allegations." *Id.* The ALJ noted that Bailey reported, for example, that he could take care of his pets, do household repairs, drive and shop, manage finances, hunt and fish, follow instructions, and get along with others. *Id.* These activities, the ALJ concluded, "[were] consistent with the ability to perform a range of light work" and "directly" contradicted Bailey's allegation that his impairments significantly limited his work abilities. *Id.*

The ALJ also summarized that the state-agency medical consultant, Dr. Scott Touger, opined that Bailey's impairments were not severe, and that Dr. Raborn concluded that Bailey could walk continuously in an eight-hour workday and should

11

avoid exposure to dust, fumes, and temperature changes.[6] *See* R. 23 (citing R. 452). The ALJ found these opinions "generally persuasive" because they were consistent with the evidence showing "occasional findings of wheezes and cough" and "generally normal" pulmonary examinations. *Id.* In contrast, the ALJ deemed Dr. Goldstein's opinion about Bailey's ability to lift and carry certain weight and his limitations in sitting and walking for certain periods of time unpersuasive because the evidence and records showed normal results, managed symptoms, and exacerbations caused only by activities in which Bailey knowingly engaged. *See id.*

In sum, the ALJ determined that Bailey did not have an impairment that significantly limited his basic work activities and concluded that Bailey was not disabled. R. 24. *See also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) ("If the ALJ concludes that none of the claimant's impairments are medically severe, the ALJ is to conclude that the claimant is not disabled.").

## V.

Bailey asserts that the ALJ could not have reasonably found his asthma nonsevere and should have explicitly considered Bailey's work history. *See* doc. 13 at 2, 9, 16. Unfortunately, these arguments lack merit.

---

[6] It is unclear whether Dr. Raborn meant that Bailey *could* walk continuously in an eight-hour workday or had *limitations* in his ability to walk continuously in an eight-hour workday. The relevant medical record states: "[Bailey] has limitation in walking and are able to walk continuously in an 8 hour work day. [Bailey] has limitations in exposure to dust, fumes or temperature changes." R. 452.

12

A.

Bailey first challenges the ALJ's finding that Bailey's asthma was not a severe impairment. *See id.* at 2. Bailey asserts that his doctors' opinions, especially that of Dr. Goldstein, whom the ALJ deemed unpersuasive, established the severity of his asthma. *Id.* at 6. He also argues that the ALJ's "selective references" to the record and to Bailey's "sporadic daily activities" did not support a nonsevere finding. *Id.* at 10, 13.

As noted, the ALJ "must 'consider the medical severity of [the claimant's] impairment(s)'" at Step Two. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1264–65 (11th Cir. 2019) (citing *Phillips*, 357 F.3d at 1237; 20 C.F.R. § 404.1520(a)(4)(ii)). "An impairment . . . is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."[7] *Id.* at 1265 (quoting 20 C.F.R. § 404.1522(a)). The claimant retains the "mild" burden to show that an impairment is severe, and "only claims based on the most trivial impairments [are] rejected." *Id.* The court looks to two instructive cases for context.

---

[7] "Basic work activities" include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

*Schink*, 935 F.3d at 1265 (quoting 20 C.F.R. § 404.1522(b)) (emphasis omitted).

In *Schink*, the Circuit held that, given the claimant's years-long history of mental-health issues corroborated by "global assessment of functioning" scores and doctors' reports, substantial evidence did not support the ALJ's nonsevere impairment finding. *See id.* at 1265–66. The Circuit noted that "[e]very doctor who saw [the claimant] diagnosed him with bipolar disorder or a comparable personality disorder and opined that it significantly affected his mood, affect, and ability to interact with others," no state doctor disputed the diagnosis, and "[a]nger, mania, depression, and conflicted interpersonal relationships were present in [the claimant's] symptomatology and surely would have had some effect on [his] ability to respond to supervision and coworkers." *Id.* at 1265. The Circuit also determined that the claimant's ability to perform activities like paying bills "hardly establishe[d] that [the claimant's] mental-health issues were 'so slight and [their] effect so minimal that [they] would clearly not be expected to interfere with [his] ability to work' in any significant way." *Id.* at 1266 (quoting *McDaniel*, 800 F.2d at 1031).

Conversely, in *Davis v. Barnhart*, the Circuit held that substantial evidence supported the ALJ's finding that the claimant's depression was not severe. 186 F. App'x 965, 967 (11th Cir. 2006). The Circuit cited the following: a doctor's opinion that "[the claimant's] diagnosis was a 'toss up' between no diagnosis and adjustment disorder" and her impairments "were not grave," the ALJ's decision to give "little weight" to another doctor's opinion because that doctor noted that the claimant

14

overstated her symptoms, and the ALJ's decision to discount a third doctor's "self-contradictory" opinion. *See id.* The Circuit emphasized that "[t]he ALJ articulated his reasons for discrediting the other evaluating doctors' opinions, which [was] supported by the record," and concluded that the ALJ properly relied on the first doctor's opinion that the claimant's depression was "not grave." *Id.* Put simply, because the ALJ provided a reasonable rationale for crediting one doctor's opinion about the nonseverity of the claimant's depression over the other two opinions, the Circuit concluded that substantial evidence supported the ALJ's decision. *See id.*

In this case, Bailey claims that the evidence, and particularly Dr. Goldstein's opinion that the ALJ discounted, established the severity of his asthma. But, as in *Davis*, the ALJ clearly articulated reasons for discounting Dr. Goldstein's opinion in light of the exam results Dr. Goldstein reported and the medical records of Bailey's visits to various clinics in the years leading up to his hearing—which reasonably supported a finding of nonseverity. Indeed, these records indicated that Bailey suffered from asthma and asthma-related symptoms but that his exams came back without major abnormalities or indications of significant limitations.[8]

---

[8] *See, e.g.*, R. 342–43 (reporting, in 2019, that Bailey's exam revealed "mild respiratory wheezing," "regular respiratory rate," "[s]lightly increased bronchial vascular markings," and "no other acute abnormalities"); R. 450 (reporting, in 2019, that Bailey had "expiratory wheezing" and "coughing" but "appeared to have no shortness of breath at rest" and "did not appear to be using the accessory muscles of respiration"); R. 521 (reporting, in early 2020, that Bailey "ha[d] some cramping of his fingers and toes," his lungs were "clear," his nasal passages "[were] minimally congested," and his "[s]pirometry was acceptable").

Moreover, though the ALJ could not selectively rely on Bailey's hobbies as dispositive of his ability to work, *see* 20 C.F.R. § 404.1572(c), the ALJ mentioned the hobbies as described in Bailey's medical records and self-report to the extent that they appeared to undermine his testimony about his asthma-related limitations in mobility, *see* R. 21–22. While Bailey's burden to establish the severity of his asthma was mild, the court is not to reweigh this evidence or substitute its own judgment, and substantial evidence supports the finding that Bailey's asthma was not severe.

B.

Bailey also asserts that the ALJ did not cite Bailey's "virtually 44 years of uninterrupted employment prior to his alleged onset date." Doc. 13 at 16. It is true that the ALJ did not mention Bailey's work history, although the regulations instruct ALJs to "consider all of the evidence presented, including information about [the claimant's] prior work record" when evaluating symptoms and related testimony. 20 C.F.R. § 404.1529(c)(3). However, an ALJ need not "specifically refer to every piece of evidence in his [or her] decision." *Mitchell*, 771 F.3d at 782. Here, the ALJ considered the information that Bailey's clinicians and evaluators submitted about his asthma and symptoms, including what aggravated them, what medications alleviated them, and how they affected him; the ALJ also considered Bailey's hearing testimony and self-report. *See* R. 20–22. In other words, the ALJ's decision "is not a broad rejection which is not enough to enable [the court] to conclude that

the ALJ considered [Bailey's] medical condition as a whole." *See Mitchell*, 771 F.3d at 782. Accordingly, and because the ALJ articulated reasons for discounting some of Bailey's testimony in light of the medical evidence, substantial evidence supports the ALJ's decision in this respect.

## VI.

To close, the ALJ's decision denying benefits is due to be affirmed because it is supported by substantial evidence. An order effectuating this opinion follows.

**DONE** the 16th day of February, 2022.

                                              **ABDUL K. KALLON**
                                     UNITED STATES DISTRICT JUDGE